IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 07-cv-01191-WDM-CBS

DAWN GRADY,

    Plaintiff,

v.

JEFFERSON COUNTY, COLORADO,
JEFFERSON COUNTY BOARD OF COUNTY COMMISSIONERS,
JEFFERSON COUNTY SHERIFF TED MINK, in his individual and official capacities,
JEFFERSON COUNTY SHERIFF'S DEPARTMENT CHIEF DAVID WALCHER, in his individual and official capacities,
DEPUTY JENNIFER GARNETT, in her individual and official capacities, and
NURSES JANE DOES 1 and 2,

    Defendants.

## ORDER ON PARTIAL MOTIONS TO DISMISS

Miller, J.

This case is before me on the Partial Motions to Dismiss (docs no 13 and 44) and supplemental brief (doc no 78) filed by Defendants Jefferson County, Jefferson County Board of County Commissioners, Jefferson County Sheriff Ted Mink ("Sheriff Mink"), and Jefferson County Sheriff Division Chief David Walcher ("Chief Walcher") (collectively, the "Jefferson County Defendants").  Plaintiff opposes the motions.  I have reviewed the parties' written arguments and the evidence submitted with their briefs.  For the reasons that follow, the motions will be granted in part and denied in part.

### Background

This is a civil rights action pursuant to 42 U.S.C. § 1983 and Colorado state law

arising from Plaintiff's incarceration at the Jefferson County Jail (the "Jail") in Golden, Colorado. According to the allegations in the Amended Complaint ("Complaint"), which now governs this dispute, Plaintiff was held in the Jail on misdemeanor drug charges. Complaint ¶ 13. Plaintiff had been treated for cauda equine sydrome, a physical malady centered around the spine in the lower back region. Complaint ¶ 15. Medical personnel had exempted Plaintiff from work activities and this exemption was on record at the Jail. Complaint ¶¶ 15-16. Notwithstanding this, on June 7, 2005, Defendant Garnett ordered Plaintiff and other detainees to clean the pod, even after Plaintiff reminded Garnett of the restrictions. Complaint ¶¶ 18-22. Plaintiff complied and several hours later began to experience numbness in her lower body and bleeding from her vagina. Complaint ¶¶ 23-27. Defendant Garnett did not permit Plaintiff to see medical staff. Complaint ¶ 29. Plaintiff was finally seen by two nurses, one of whom provided no treatment and the other of whom diagnosed a urinary tract infection and sent Plaintiff back to the unit. Complaint ¶¶ 32-38. The next morning, Plaintiff was unable to feel her legs. Complaint ¶ 41. Subsequent medical evaluation revealed that one of Plaintiff's lumbar discs had herniated into her spinal column and she is now paralyzed below the hips. Complaint ¶¶ 43-46.

Plaintiff asserts the following claims: (1) violation of Plaintiff's constitutional right to adequate medical care against all Defendants pursuant to 28 U.S.C. § 1983; (2) failure to train/supervise against Defendants Jefferson County, Jefferson County Board of County Commissioners, Sheriff Mink and Chief Walcher pursuant to 28 U.S.C. § 1983; (3) negligent training and supervision Defendants Jefferson County, Jefferson County Board of County Commissioners, Sheriff Mink and Chief Walcher; (4) medical

malpractice/negligence against Nurses Jane Does 1 and 2; and (5) outrageous conduct against Jefferson County, Jefferson County Board of County Commissioners, Deputy Garnett, Nurses Jane Does 1 and 2.

## Standard of Review

A complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). The court must accept as true all well-pleaded facts and construe all reasonable allegations in the light most favorable to the plaintiff. *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996).

## Discussion

The Jefferson County Defendants seek to dismiss several defendants and claims. First, they argue that "Jefferson County" is not a proper party and that claims asserted against the County must name the Board of County Commissioners. They further assert that no individual claims can be asserted against Sheriff Mink or Chief Walcher because the complaint does not allege any personal participation by these defendants. In addition, they argue that the official capacity claims against these defendants are redundant of the claims against the governmental entity (here, the Board) and should be dismissed. Finally, the Jefferson County Defendants contend that Plaintiff's claims tort claims, including outrageous conduct and negligent failure to train or supervise, against the government entity are barred by the Colorado Governmental Immunity Act ("CGIA").

1. County Liability

Plaintiff has asserted liability against the governmental entity employing the primary defendants in numerous and redundant ways, as she has named "Jefferson County" and the Board of County Commissioners of Jefferson County as defendants and has asserted official capacity claims against Sheriff Mink, Chief Walcher, and Deputy Garnett.

A municipality or other governmental entity may be subjected to liability under § 1983 where the action alleged to be unconstitutional executes or implements a governmental policy or custom. *Monell v. New York Dept. of Social Services*, 436 U.S. 658, 690-91 (1978). In addition, an action against the Sheriff in his official capacity is essentially an action against the entity that employs him–i.e., Jefferson County. *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).

As the Jefferson County Defendants correctly assert, under Colorado law, a claim against a county must be asserted against the Board of County Commissioners of that county. C.R.S. § 30-11-105. Plaintiff has named the Board as a defendant. Moreover, Plaintiff's claims against the individual defendants in their official capacity is sufficient to assert governmental entity liability under section 1983. Accordingly, I agree that "Jefferson County" is not a proper party and should be dismissed.

2.  <u>Individual and Official Capacity Liability of Sheriff Mink and Chief Walcher</u>

The Jefferson County also asserts that all claims should be dismissed against Sheriff Mink and Chief Walcher. I disagree.

First, I conclude that given the requirement that I construe the allegations in the light most favorable to Plaintiff, Plaintiff has adequately stated a claim for individual liability

4

against these defendants.

To establish supervisory liability under section 1983, a plaintiff must establish a "deliberate, intentional act" by a supervisor such that there is a "sufficient causal connection" between the supervisor and the constitutional violation. *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006). Mere negligence generally is not sufficient to establish liability. *Id.* Rather, a plaintiff must show active participation or acquiescence through personal participation, exercise of control or direction, failure to supervise, or tacit authorization of the offending acts. *Id.* at 1152-53. A supervisor or municipality may be held liable where there is essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable. *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988). Where, as here, the sheriff is responsible for proper management of a jail, the sheriff may be accountable if he "knew or should have known of the misconduct, and yet failed to prevent future harm." *Id.* (citations omitted).

At this early stage of the pleadings and under the facts alleged in the Amended Complaint, it is plausible that Plaintiff can establish that the harm to her resulted from a failure to train or supervise by one or both of these defendants. Accordingly, dismissal of these claims is not appropriate at this time.

Similarly, I disagree that the official capacity claims against these defendants should be dismissed. Under the Colorado Constitution, county commissioners and Sheriffs are separate governmental officers. Colo. Const. art. XIV. Pursuant to statute, sheriffs have the authority and responsibility to oversee county jails. C.R.S. § 30-10-511. Colorado courts have determined that a sheriff, not the board of commissioners, is the

5

legal entity responsible for tortious behavior by a deputy sheriff. *Tunget v. Board of County Comm'rs of Delta County*, 992 P.2d 650, 651-52 (Colo. App. 1999). If Plaintiff is successful on her official capacity claims, the county's funds will be available to satisfy a judgment. The parties also do not appear to dispute that the Sheriff is the final policymaker for matters concerning the operations of the Jail. *See, e.g., Cortese v. Black*, 838 F.Supp. 485, 496 (D.Colo. 1993). Thus, the official capacity claims against these defendants are the proper way to assert entity liability under section 1983. The Board may be a redundant party but at this stage of the proceedings, I decline to dismiss it since no party has so moved.

3.  Outrageous conduct claim against the Board

The Jefferson County Defendants contend that Plaintiff's state law claim against the Board is barred by the CGIA, specifically C.R.S. § 24-10-114(a), which prohibits an award of punitive or exemplary damages or damages for outrageous conduct against public entities. Plaintiff argues in response that the CGIA waives immunity for claims of negligence arising out of the operation of a jail. C.R.S. § 24-10-106(1)(b). Plaintiff is correct the CGIA waives immunity for certain defendants for certain claims of negligence, including those arising from the operation of a jail; however, this does not trump the express bar on all claims for outrageous conduct asserted against a government entity. *See e.g., Belfiore v. Colo. State Dep't of Highways,* 847 P.2d 244, 246 (Colo. App. 1993). Accordingly, the outrageous conduct claim is barred by governmental immunity.

4.  Negligence claims

In their supplemental brief, the Jefferson County Defendants argue that Plaintiff was

6

not a pretrial detainee, as claimed in the complaint, but in fact had been convicted at the time of her alleged injury. The Jefferson County Defendants offer evidence, which Plaintiff does not contest, in the form of official records demonstrating that Plaintiff pled guilty to two counts of check forgery and was convicted on May 23, 2005 (Exh. A-1) and one count of marijuana possession on January 5, 2004 (Exh. A-2). They argue that Plaintiff was in the county jail awaiting sentencing and, therefore, her claims are evaluated as that of an incarcerated prisoner, not a pretrial detainee. *See Berry v. City of Muskogee*, 900 F.2d 1489, 1493 (10th Cir. 1990) (since guilty plea is equivalent to a conviction, claims of inmate who had pled guilty but not been sentenced were analyzed under Eighth Amendment because inmate was not a pretrial detainee); *see also People v. French,* 165 P.3d 836, 840 (Colo. App. 2007) (guilty plea was "conviction" for purposes of sentencing enhancement statute).

Under the CGIA, immunity of a governmental entity is waived for tort claims arising out of the operation of a correctional facility or jail. C.R.S. § 24-10-106(1)(b). However, this waiver applies only when the claimant is a pretrial detainee and "does not apply to claimants who have been convicted of a crime and incarcerated in a correctional facility or jail pursuant to such conviction." C.R.S. § 24-10-106(1.5)(a) and (b). The Jefferson County Defendants argue that because Plaintiff was incarcerated pursuant to a conviction, the waiver of governmental immunity for claims arising from the operation of a jail is inapplicable, and Plaintiff's negligence and other tort claims against the Board are barred.

Whether a claim falls within one of the waiver of immunity provisions in Colorado Governmental Immunity Act is an issue of subject matter jurisdiction. *Sereff v. Waldman*,

30 P.3d 754, 756 (Colo. App. 2000). A motion to dismiss alleging lack of jurisdiction is considered under Fed. R. Civ. P. 12(b)(1). I may consider Defendant's evidence regarding Plaintiff's status without converting the motion to dismiss to a motion for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir.1995) (when a party challenges the allegations supporting subject-matter jurisdiction, the "court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. . . . In such instances, a court's reference to evidence outside the pleadings does not convert the motion [to dismiss] to a Rule 56 motion [for summary judgment].").

Plaintiff argues that a guilty plea is not a "conviction" and, moreover, that she was she was not incarcerated pursuant to a conviction of a crime. She states that at the time of her injury, she was being held based on her failure to appear for scheduled court appearances. Specifically, she entered a plea on one charge, was released on bond, charged with further offenses, again released on bond, taken into custody for failure to appear, entered additional guilty pleas, and was awaiting sentence when her injury occurred. She essentially argues that the plain language of the statute requires that "incarcerated . . . pursuant to such conviction" should be construed to mean the serving of a sentence.

I cannot agree with Plaintiff's argument. In interpreting a statute, I am to determine and give effect to the intent of legislature. *Klinger v. Adams County School Dist. No. 50*, 130 P.3d 1027, 1031 (Colo. 2006). I should avoid interpreting a statute in a way that would defeat the obvious intent of the legislature. *Id.* Words and phrases should be read

in context and be construed literally according to common usage unless they have acquired a technical meaning by legislative definition. *Id*. If the language of a statute is ambiguous, as it is here, I look to "legislative history, prior law, the consequences of a given construction, and the goal of the statutory scheme to ascertain the correct meaning of [the] statute." *Id*.

Construing the statute as a whole, I conclude that the waiver of immunity does not apply to an individual, such as Plaintiff, who has been convicted but not yet been sentenced. First, the operative term used throughout the provision is not "sentence" or "judgment of conviction" but "conviction." Under Colorado principles of statutory interpretation, I should generally presume that the legislature is aware of the previously expressed legal importance of the words and phrases it uses. *People v. Guenther*, 740 P.2d 971, 976 (Colo. 1987). In most contexts, the courts have interpreted a guilty plea or the acceptance of a guilty plea to be the equivalent of a conviction for the offense. *See, e.g.,* C.R.S. § 16-7-206(3); *French, supra*; *People v. Hastings*, 903 P.2d 23, 26-27 (Colo. App. 1994) (under deferred sentencing act, guilty plea is a conviction but judgment of conviction and sentencing are deferred); *Rodriquez v. People*, 191 Colo. 540, 541, 554 P.2d 291, 292-93 (1976) (in the context of the bail bond statute, "conviction" occurs upon entry of a guilty plea). The cases cited by Plaintiff in opposition to this do not address the effect of a guilty plea in the context of a statute containing the term "conviction" or involve different statutory language. *See ,e.g., People v. Jacquez*, 196 Colo. 569, 588 P.2d 871 (interpreting habitual offender provision setting date for prior conviction; statute referred to "former conviction or convictions and judgment or judgments"); *People v. District Court*,

9

191 Colo. 558, 554 P.2d 1105 (1976) (in the context of the class 1 felony sentencing statute, "conviction" means convicted upon trial and does not mean a final determination after appeal), *see also People v. Salazar*, 39 Colo.App. 409, 568 P.2d 101 (1977) (citing *People v. District Court* in interpreting probation revocation statute to hold that "conviction" does not mean final determination after appeal). Regardless, uncontested Exhibits A-1 and A-2 identify the date of "conviction" and not merely plea.

In addition, reading the statute as a whole persuades me that the operative event revoking the waiver of immunity is a adjudication of guilt, not the imposition of a sentence. The two key parts of the statute provide that (1) the waiver of immunity does not apply to claimants "who have been convicted of a crime and incarcerated in a correctional facility or jail pursuant to such conviction" and (2) the waiver does apply to claimants "who are incarcerated but not yet convicted of the crime for which such claimants are being incarcerated." C.R.S. § 24-10-106(1.5) (a) and (b). The statute thus has the purpose of a establishing a dividing line between categories of persons for whom immunity is waived and those for whom it is not. I can see no rational reason for the legislature to grant greater protections to those determined to be guilty but not sentenced than those whose sentences have been imposed (or whose sentences are deferred). Similarly, I cannot discern any policy basis for creating a dividing line for those incarcerated for failure to appear and other purposes preceding sentencing and those following sentencing. It is more rational and consistent with the purpose of the statute to construe the dividing line to fall at the determination of guilt, rather than sentencing. Persons still presumed innocent of a crime are generally afforded much greater protections in all aspects of

criminal procedure and it makes sense to expand this to the waiver of immunity.

Under the circumstances, I must find that Plaintiff was convicted at the time of her incarceration and, therefore, her negligence and other tort claims against the Board (and against the individual defendants in their official capacities) are barred by the CGIA.

Accordingly, it is ordered:

1. The Jefferson County Defendants' Partial Motion to Dismiss (doc no 13) is granted in part and denied in part. "Jefferson County" shall be dismissed as a party. The individual and official capacity claims against Sheriff Mink and Chief Walcher remain pending, except as indicated below.

2. The Jefferson County Defendants' Partial Motion to Dismiss the Amended Complaint (doc no 44) is granted. Plaintiff's tort claims against the entity defendants (i.e., Board of County Commissioners and individuals in their official capacities) are dismissed pursuant to the CGIA.

3. The following claims in Plaintiff's Amended Complaint (doc no 35) remain pending: (1) violation of Plaintiff's constitutional right to adequate medical care pursuant to 28 U.S.C. § 1983 against Defendants Jefferson County Board of County Commissioners, Sheriff Mink, Chief Walcher, Deputy Garnett, and Nurses Jane Does 1 and 2; (2) failure to train/supervise pursuant to 28 U.S.C. § 1983 against Defendants Jefferson County Board of County Commissioners, Sheriff Mink, and Chief Walcher; (3) negligent training and supervision against Sheriff Mink and Chief Walcher in their individual capacities; (4) medical malpractice/negligence against Nurses

11

Jane Does 1 and 2; and (5) outrageous conduct against Deputy Garnett, Nurses Jane Does 1 and 2.

DATED at Denver, Colorado, on January 17, 2008.

BY THE COURT:


s/ Walker D. Miller
United States District Judge