IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 07-cv-01191-WDM-KMT

DAWN GRADY,

    Plaintiff,

v.

JEFFERSON COUNTY BOARD OF COUNTY COMMISSIONERS,
JEFFERSON COUNTY SHERIFF TED MINK, in his individual and official capacities,
JEFFERSON COUNTY SHERIFF'S DEPARTMENT CHIEF DAVID WALCHER, in his individual and official capacities,
DEPUTY JENNIFER GARNETT, in her individual and official capacities, and
NURSES JANE DOES 1 and 2,

    Defendants.
_____

**ORDER**
_____

This matter is before the Court on "Defendants' Motion to Reduce Fee for Plaintiff's Expert Witness, Richard Spiro, M.D." ("Motion" [Doc. No. 95, filed February 4, 2008]). The Court ordered expedited briefing on the issue on February 6, 2008 and the Plaintiff's Response was filed on February 12, 2008 ["Rsp." Doc. No. 98]. The Plaintiff filed a Reply on February 14, 2008. ["Reply" Doc. No. 100]

Defendant's Motion seeks a reduction in the hourly fee of $1,000.00 charged by Plaintiff's expert medical witness, Dr. Richard Spiro, for deposition testimony which occurred on February 18, 2008 in Pittsburgh, Pennsylvania pursuant to properly issued notice. (Motion, Exhibit A-1)

If a witness has been retained or specially employed to provide expert testimony, the retaining party must serve an expert report within the time frame set forth in Fed. R. Civ. P. 26(a)(2)(C). Whether or not a doctor has been retained, as long as they have been identified as a witness who will provide expert opinion testimony, pursuant to Rule 702, they may be deposed. Fed. R. Civ. P. 26(b)(4)(A). Rule 26(b)(4)(C) of the Federal Rules of Civil Procedure provides that "the court shall require that the party seeking discovery pay the expert a <u>reasonable</u> fee for time spent in responding to discovery," unless manifest injustice would result. Fed. R. Civ. P. 24(b)(4)(C)(emphasis added). Although few published cases discuss what constitutes a "reasonable" expert fee, seven factors have emerged to guide in the determination of the reasonableness of a fee

> 1) the witness' area of expertise; (2) the education and training required to provide the expert insight that is sought; (3) the prevailing rates of other comparably respected available experts; (4) the nature, quality and complexity of the discovery responses provided; (5) the fee actually being charged to the party who retained the expert; (6) fees traditionally charged by the expert on related matters; and (6) any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26.

*Young v. Global 3, Inc.*, 2005 WL 1423594, *1 (D. Colo.). *See U.S. Energy Corp. v. Nukem, Inc.,* 163 F.R.D. 344, 345-46 (D. Colo. 1995); *Mathis v. NYNEX*, 165 F.R.D. 23, 24-25 (E.D.N.Y. 1996); *Jochims v. Isuzu Motors, Ltd.,* 141 F.R.D. 493, 496 (S.D. Iowa 1992). As a basic premise, the expert's fee should not be so high as to impair a party's access to necessary discovery or result in a windfall to the expert. *Young* at *1; *Mathis* at 24.

The plaintiff's expert witness, Dr. Richard Spiro, M.D., is a neurological surgeon located in Pittsburgh, Pennsylvania, the site of the deposition. (Motion, Exhibit A-2) Plaintiff has provided

defendants with a fee schedule for Dr. Spiro wherein he purports to charge $2,000.00 per hour for deposition testimony (maximum total charge $6,000.00). (Motion, Exhibit A-3) Dr. Spiro has agreed to reduce his fee for the deposition in this case to $1,000.00 per hour. (Rsp. at 2, Exhibit 3 at ¶ 3) Dr. Spiro's charge per trial day is $6,000.00 and his fee for a telephone conversation is $1,000 per hour. (Motion, Exhibit A-3). It is not clear whether Dr. Spiro's charges differ for plaintiff verses defendant, however, logically a "trial day cost" would likely be borne by plaintiff who is calling the expert on her behalf, while a deposition expense would be borne by the defense. The experience of this case shows that fees charged by medical experts are negotiable and dependent upon the bargaining skills or power of the party retaining the expert initially, as well as the concomitant loss of negotiating power possessed by the opposing side.

In support of their claim that $1,000.00 per hour is not a reasonable fee as provided by the Rule, the defendants have submitted the curriculum vitae ("CV") of two Colorado orthopaedic surgeons, Dr. Anthony Dwyer and Dr. A. Stewart Levy, who were retained as defense experts in this case and who have been deposed. (Motion, Exhibits A-5 and A-6) Both Colorado surgeons charged $450.00 per hour for their deposition testimony. (Motion at 6)

The plaintiff does not dispute that the Colorado surgeons charged $450.00 per hour for deposition testimony while Dr. Spiro is demanding $1,000.00 per hour for the same service. (Rsp. at 4). However, plaintiff argues that the two Colorado neurosurgeons are situated differently from Dr. Spiro because both Dr. Levy and Dr. Dwyer were, at different isolated points, treating physicians of the plaintiff. (Rsp. at 5-6). The Defendants counter that they have designated and

3

will call the two doctors primarily as experts and that factual testimony regarding any treatment of the plaintiff is a minor part of any testimony they will provide as experts. (Reply at 4)

Exhibit A-5 to the Motion is the sixteen page[1] CV of Dr. Anthony Dwyer. While mere length of a CV does not necessarily predict the value of its contents, Dr. Dwyer does have impressive credentials. He is licensed in six states and was a Fellow of the Royal College of Surgeons in Edinburgh, England and Australia. He has an extensive academic background, graduating from medical school in 1966 and is a professor at the Colorado Health Science Center as well as having been a clinical professor in New Orleans, Louisiana, and a lecturer in various locations around the world. Dr. Dwyer lists twenty-four different publications which he authored or co-authored, as well as eight book chapters. He also was a presenter at forty-four national gatherings and exhibits. Dr. Dwyer is a board member or member of a number of regional or national sub-specialty orthopaedic societies, including acting as a chairman of the North American Spine Society and also served on the Legal Issues Committee of that society.

Based on these credentials, Dr. Dwyer's published fee schedule indicates he will charge between $750 - $1,000 per hour to appear for deposition testimony. (Rsp. Exhibit 7) The fee schedule also notes a charge of $600.00 per hour for telephonic legal consultation. In or about July, 2006, Dr. Dwyer charged the plaintiff's attorney $300.00 for telephone consultation for one-half hour, apparently based on the published fee schedule. (Rsp. at 4)

---

[1] The court notes that in several instances, the CV appears to be in question and answer format and several answers indicate Dr. Dwyer had no experience in the questioned area.

According to Exhibit A-6 of the Motion, Dr. A. Stewart Levy is the Chief of Neurosurgery at St. Anthony Central Hospital. Dr. Levy has a nine page CV indicating he is licensed in two states and has been a professor of surgery since 1997 at the Colorado Health Sciences Center. Dr. Levy boasts an outstanding academic record and graduated from medical school in 1990. He is on the board of directors for several committee posts and is a member of the Institutional Review Board for the Spinal Injury Foundation. He is currently Secretary of the Rocky Mountain Neurosurgical Society, having been Vice President in 2006-2007. He has presented at sixty-two lecture series, mostly on brain and spine injuries, many involving snowboarding and skiing accidents.

Based on his credentials, Dr. Levy's published fee schedule indicates he charges $1,000 per hour for deposition testimony and $1,000 per hour for legal consultation. (Rsp. Exhibit 6) On December 7, 2007, Dr. Levy quoted a price of $500 for a one-half hour meeting with plaintiff's counsel, the full fee schedule rate. (Rsp. at 5) The plaintiff decided against the meeting on the basis of cost.

Plaintiff's expert witness, Dr. Richard Spiro, studied at Johns Hopkins and graduated first in his class from the University of South Alabama College of Medicine (1/64) in 1998, where he received several honors and awards and completed his neurosurgical residency in 2004. (Motion, Exhibit A-7) He has been a professor at the University of Pittsburgh Medical Center where he is the Chief, Spine Surgery. He is licensed in Pennsylvania and received his board certification in neurological surgery in 2006. He has authored five peer reviewed articles along with other doctors, and one book chapter. Additionally, he participated in three peer reviewed abstracts and

5

has presented lectures on eight occasions, mostly in the area of tumor necrosis factor. Dr. Spiro, as noted earlier, has a published fee rate of $2,000 per hour for deposition testimony, but has agreed to charge the defendant's $1,000 per hour in this case. The defendants continue to argue that this reduced rate is excessive.

While all the medical professionals have impressive credentials, the two more senior Colorado orthopaedic surgeons have far more lengthy careers and credentials, especially in the area of the type of injuries to the plaintiff. There is simply no contest between Dr. Spiro and Drs. Levy and Dwyer when analyzing the seven factors relevant to the reasonable fee calculation: 1) the witness' area of expertise - all the neurosurgeons specialize in the area where plaintiff was most affected, but the Colorado doctors have far more experience in that specialty than Dr. Spiro; (2) the education and training required to provide the expert insight that is sought - all doctors have outstanding academic credentials, however the size and prominence of their schools and residencies differ; (3) the prevailing rates of other comparably respected available experts - the two Colorado doctors are charging $450 per hour for deposition testimony in this case, while the least experienced physician, Dr. Spiro, is charging $1,000 per hour. Further, even without the bargained for rate adjustments, the fee schedules of the three doctors indicate that Dr. Spiro is charging at least twice as much as the other two physicians who have more experience; (4) the nature, quality and complexity of the discovery responses provided - the parties have not addressed this issue and the record is therefore devoid of information upon which the court can make a comparison; (5) the fee actually being charged to the party who retained the expert - the plaintiff claims to have paid Dr. Spiro $3,500 in the case. (Rsp. at 6) Presumably this figure would include

a records review for $3,000[2] but it is unclear what else may have been included in that fee; (6) fees traditionally charged by the expert on related matters - neither party has presented evidence on this point other than the three fee schedules referenced herein. On the fee schedules Dr. Spiro is charging more than twice as much for deposition testimony, a little less than twice the rate for Dr. Dwyer's telephone consultation and the same rate as telephone consultation with Dr. Levy, and for trial a flat $6,000 per day as compared to Dr. Levy at $1,250 per hour and Dr. Dwyer at $1,000 per hour, neither with a minimum number of hours; and (6) any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26.

Although it is unknown what Dr. Spiro charges for an office visit, it is unlikely that he charges $1,000 per hour.[3] One court, examining the issue of reasonableness of expert witness fees stated

> [T]he Court recognizes that depositions of an adverse expert are, at times, stressful and, unfortunately, usually adversarial in nature. Moreover, depositions require better preparation and more thoughtful and precise answers by the deponent than a casual office visit with retaining counsel or a patient. Thus, the Court finds it

---

[2] Dr. Spiro's fee schedule says the record review "assumes four hours." (Exhibit 95-4)

[3] *Dobson v. Matrixx Initiatives, Inc.*, 2007 WL842130, *2 (S.D. Fla. 2007) reported an estimated salary range for a neurologist to be $171,000-$345,000. This court finds the approximated salaries of the universe of neurologists to be too general to be of specific use when comparing one Pennsylvania neurosurgeon specifically to two Colorado neurosurgeons, all preparing to testify in the same case. However, it does support the inference that Dr. Spiro does not charge his neurosurgery patients $1,000 per hour, or for that matter, even $500 per hour. Based on a 40 hour work week (a debatable proposition from the start given statements in the Response about Dr. Spiro's work day), a $345,000 per year salary equates to roughly $166 per hour. The more hours above forty that a salaried employee works, the less the hourly rate.

reasonable to charge a <u>modestly</u> higher fee for a deposition taken by adverse counsel but not two or more times the cost for a medical/legal consultation.

*Edin v. Paul Revere Life Ins. Co.* 188 F.R.D. 543, *547 (D. Ariz. 1999)(emphasis added).

Defendants suggest that "a scheduled deposition prevents Dr. Spiro 'from performing surgery or continuing with [his] normal routine'" theoretically costing him money as payment for the foregone surgery. There is nothing in the record to support this sweeping assertion. To the contrary, the defendants set the deposition at 4:00 p.m. in order to avoid any conflict with Dr. Spiro's surgical duties and responsibilities. Dr. Spiro's own assistant confirmed that this setting would not conflict with Dr. Spiro's medical or surgical schedule. (Reply at 6)

Other courts addressing reasonableness of expert fees have reached varying results. *See, Hose v. Chicago and North Western Transportation Co.,* 154 F.R.D. 222, 227 (S. D. Iowa 1994) (reducing expert neurologist's fee from $800/hr, the doctor's usual hourly charge for neurological testing, to $400/hr, where expert was not a preeminent expert in his field, did not possess knowledge or training unique from other neurologists, had his office in Papillion, Nebraska, and was the plaintiff's treating physician; comparable experts charged between $375 and $429 an hour); *Dominguez v. Syntex Labs, Inc.,* 149 F.R.D. 166, 170 (S.D. Ind. 1993)(reducing fee from $800/hr to $341.50/hr for neurologist specializing in smell and taste disorders, where doctor charged other clients $800/hr for depositions but billed $94/hr for patient office visits, and other neurologists with similar qualifications charged between $120 and $300/hr for depositions); *Draper v. Red Devil, Inc.,* 114 F.R.D. 46, 48 (E.D. Ark. 1987)(accepting electrical engineer's requested fee of $110 per hour as reasonable); *Anthony v. Abbott Labs.,* 106 F.R.D. 461, 465

8

(D.R.I.1985)(awarding physician $250 per hour as the "outermost periphery of the range of sustainable awards" where doctor was "one of only a handful of physicians" who had the qualifications and expertise to testify about causative effects of DES and in his last deposition had charged a "friendly" litigant $250 per hour for his time). Of course, the precise dollar amount of fees per hour discussed in terms of older cases are not particularly relevant to the dollar amount of reasonable fees charged in 2008. The parity principles set out in the seven categories of comparisons, however, remain viable and the cases are instructive in their quantitative analyses.

Against this backdrop, the court must assure that there is some reasonable relationship between the services rendered and the remuneration to which the expert is entitled. "Unless the courts patrol the battlefield to insure fairness, the circumstances invite extortionate fee setting." *U.S. Energy Corp.,* 163 F.R.D. at 346-47. In making those determinations, courts must not feel bound by an "agreement" which would result in a patently unreasonable fee. "[W]hile a party may contract with any expert it chooses, the court will not automatically tax the opposing party with any unreasonable fees charged by the expert." *Kernke v. Menninger Clinic, Inc.,* 2002 WL 334901, *1 (D. Kan. 2002); *Young,* 2005 WL1423594 at 2 (expert physician witness's fee of $1,200.00 per hour for deposition testimony grossly exorbitant; court reduced to reasonable fee of $500.00 per hour.)

This court finds that the deposition hourly rate of $2,000 per hour as set forth in Dr. Spiro's fee schedule is grossly excessive and comes near to being extortionate. More problematic, however, is the also steep fee of $1,000 per hour actually being charged by Dr. Spiro for his deposition testimony because both Colorado neurosurgeons list this as their own published fee for

9

deposition testimony, even though neither is actually charging these rates. In spite of their reduction in rates for this case to the reasonable fee of $450 per hour for deposition testimony, however, both Colorado physicians either billed or quoted rates for consultation with plaintiff's counsel based upon their published fee schedules.

In spite of this, however, the court must not shirk its independent responsibility as gatekeeper against excessive windfall billing by medical experts appearing in federal court. *See Young,* 2005 WL1423594 at 2. Based on the facts before the court, the court finds that a reasonable hourly rate for Dr. Spiro's deposition testimony is not more than $600 per hour.[4]

Accordingly, for the foregoing reasons, it is hereby ORDERED

Defendants' Motion to Reduce Fee for Plaintiff's Expert Witness, Richard Spiro, M.D. [Doc. No. 95] is GRANTED. Compensation provided to Dr. Spiro for his deposition testimony will be made consistent with this order.

Dated this 25th day of February, 2008.

BY THE COURT:

s/ Kathleen M. Tafoya
KATHLEEN M. TAFOYA
United States Magistrate Judge

---

[4] The same amount actually charged to the plaintiff for legal consultation with defense expert Dr. Anthony Dwyer as noted *supra*.